The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Be seated, please. All right, the second case we're going to hear today is the United States v. Benson. And I guess first, Mr. Brandt, all right? We have quite a cast today. Good morning, Your Honors. May it please the Court. Jeff Brandt, Fourth Defendant, Appellant, Joseph Benson. And can you speak up just a little bit? I'd be happy to. We've presented to the Court a handful of arguments among three headings. For the sake of time, we'd submit that Mr. Benson's right to due process and fair trial have been violated. And probably his strongest argument is one that connects the second argument and the third argument concerning the testimony of Brandon Douglas about what co-defendant Brian Brown said that incriminated Mr. Benson and how the government's closing argument referred to that. We've obviously urged the Court to find that those statements were testimonial. Frankly, the case law does not strongly support us. We urge the Court to find that they're testimonial, but the reality is... This is what Brown said to Douglas? And that Douglas said on the stand, yes. Right, and so weren't they locked up together when they were talking? I've got so many people here, it's hard to remember who's who. I don't believe that was the lock. I think they're on the streets. What's the statement? The statements include, we had a... There's several, so summarizing, they are that we had a plan to rob Mr. Joseph. It was taken over by Wallace and the Boston boys, and they came down and they took it too far. So that's a straight statement, and that's not a testimonial statement, right? Yes, sir. Not a Bruton problem? It probably is not. Okay. But what we've argued in pages 39 and 42 of our brief is that, okay, if this is an 801 statement, a statement of a party, opposing party, if Mr. Brown's an opposing party because he's sitting next to Mr. Benson, and if the Court's going to give a limiting instruction, the limiting instruction is insufficient under these circumstances. And under this Court's case law, when there's a, quote, specific reason to doubt that the jury adhered to the District Court's limiting instruction, end of quote, the Court can conclude that the jury did not follow it. That's the opinion and the run-in decision. Can I ask a question that comes before this? So when I read the District Court, and these are probably more for your colleague on the other side, but I read the District Court as introducing it as a statement against penal interest, and I understand there's some disagreement about that. If it is introduced as a statement against penal interest, you agree in that scenario it was fully admissible against client as a non-testimonial statement against penal interest, and so this issue goes away. This issue exists only if it was introduced for the sole purpose of being a statement of a party opponent. Is that right? I think it's strategically smart to say yes to that because the District Court said, as an alternative, I'm going to let it in under statement of party opponent, and I think it's probably true that the government had enough corroborating evidence of the same. But your argument, so tell me why I shouldn't or the court should not just determine that this evidence was admissible as a statement against penal interest and be done with it. Why is that not the path for us? Because if we go that path, then I think that we have the problems of the failure to redact the statements, and still we have a problem with the limiting instruction. But a statement against penal interest doesn't need to be redacted, and there doesn't need to be a limiting instruction because it's admissible. Brown's statement against penal interest under our precedent is admissible against Benson. If it's a statement against penal interest under 804. Correct. I think that we established in the brief that that's not the case, that it's not admissible if without the limiting instruction. Under 804B3? That's correct. Why not? Let me ask you if you have a different argument. Do you think the government has abandoned the argument that it was admitted under 804B3? Absolutely. Okay, tell me why. Because when we made an argument in our brief saying that this could not be admitted under 803, the government said we don't have to worry about that because we don't have to fight that argument because as an alternative, the district court said this is admissible under 801, and that's the standard we're relying on on appeal. And your view is where the district court issues an alternative ruling, is it admissible under A or B, then the government defends it on B, that we must ignore the alternative finding of the district court? No, because the district court itself was recognizing that it had a problem. This is an appealable issue, the court says. Yeah, but the government didn't waive it. The government just picked the wrong horse, according to you. They didn't say we abandoned the other one. They basically wanted to defend the one ground which they thought was the stronger from their point of view. And if they're wrong. And I think the government's doing that because of the record and what the district court, how the district court changed course in the trial from going from 803 to 801. I mean, if they stood up here and the district court ruled on two different bases and the court says, well, the government says we don't have to argue the second basis because the first basis is enough. And I say, well, maybe you better argue the second basis. But if he says, no, we'll stand on the first, that's not a waiver, is it? If the district court had solidly ruled on both, I would agree with you, Judge Niemeyer. But I think the record shows that the district court questioned itself on whether 803 was going to be a sufficient basis to assure the appeal. That's fair enough. The court had some doubts, but it was under consideration and it was one of the reasons considered. I think by the time the judge is making a ruling that this is admissible, and during the break I will find where in the record that the district court did so. Well, it wouldn't make any difference under my question because my question is only whether there was a waiver. In answering Judge Richardson's question, you said the government waived. And I'm suggesting I don't see any waiver here. I'm picking the wrong horse, maybe. Well, the difference between a waiver and an abandonment. I agree there's no waiver. A waiver requires an affirmative act. But our cases have suggested, at least for appellants, maybe it's different for appellees, but for appellants, if you don't make the argument, then you abandon it. Rule 28 requires you to make the argument. And so they have two alternative arguments. They only make one of them. They're a sophisticated party. I think what you're trying to suggest is in that scenario that that would be abandonment. Yes, and I would say that if that's not the case, then we would go back to our 804 argument in the brief that I didn't address in the reply because they switched horses, go back to my brief for that argument. Thank you. Can you tell us real quickly what's wrong with the limiting instructions? I would say that the reason the limiting instruction was not effective here is the government's closing argument in which the government would say, don't think of a pink elephant. In other words, everybody is obviously going to think of that. They said, well, you can't use this against Benson, but let me tell you something about Brown and then goes and explains how that means Benson's guilty because he's a Boston boy. Okay. Thank you. All right. Who do we have next here? Mr. Kelletter. Good morning, Your Honor. Trey Kelletter representing Brian Brown in this matter. I would like to focus on the Bruton issue. It's issue number five in our brief, and it's a short statement. So to focus the attention on it, it's essentially that Joint Appendix 621, Detective Kempf testified that Mr. Wallace, a co-defendant, had called him specifically to cooperate in the investigation. And Detective Kempf testified that we, meaning Kempf and Mr. Wallace, the co-defendant, were speaking about this particular incident, this homicide. Mr. Wallace stated that he was just a thief and that this particular incident was supposed to be a burglar. Then Mr. Kempf describes, Detective Kempf describes that they then had a subsequent phone call. This was all one conversation over a series of calls, and that they again picked up and says. And this was all your client calling the police officer? No, no, no. This was not my client. This was Mr. Wallace. Oh, this is Wallace, right. Mr. Wallace is. But it's Wallace who's the one who's doing the calling. Right. This is before anybody's been indicted. This is years before. This is where it's unsolved. And he says it's Brown's car. And he says it's Brown's car. So in the second call, Mr. Wallace is seeking to cooperate and says, essentially, I was there, but it was planned to be a burglary, not a homicide. And then Detective Kempf specifically says to him, I told him that I couldn't make any promises, and I asked him which vehicle, meaning he and the others, that they took to this incident. He stated that they took Brian Brown's truck. And then the question was, when you say this incident, what are you talking about? The homicide. So here's an out-of-court statement that's testimonial, number one. Number two was. Let me ask you, was there evidence that came in that Brown admitted it was his truck? No. It came in through an alleged confession to another person on the street, not to a law enforcement office or anything. The other evidence against him was that he allegedly confessed to another drug dealer on the street who was cooperating and came in and said he confessed to this to me. And then one other piece of evidence. No, I'm talking about the truck. Oh, the truck. On the truck. The one piece of evidence linking him to the truck was the alleged confession to. He said the police have my truck because it involved an incident and he needed a ride, right? Right. Okay. Correct. And so the basic issues under Bruton are, was it testimonial, was it incriminating, and was it nonetheless harmless beyond a reasonable doubt? I would submit that. Well, it has to implicate on its face. Yes. I mean, so we could debate whether or not it's testimonial here, and that's a good, I think, law review question here. I mean, obviously this is not a custodial situation. It's a voluntary statement by this individual. Well, let's assume that it was testimonial. Under Bruton, the statement has to, on its face, implicate the defendant. Well, here on its face, all it says is, we took Brian Brown's truck. It doesn't say Brown said we could take it. It doesn't say Brown was with us. It doesn't say Brown even knew about it. So how does that implicate Mr. Brown on its face? Your Honor, two things, one factually and one legally. Factually, he essentially says we, a group of us, went and committed a crime together and we took Brian's truck. I would say on its face, the only way that that's not an implication that it was with Brian is a contortion to then get other information to show that he wasn't with him. But I would submit that if you say we went to the concert together, the group of us, and we took Jimmy's car, you're saying that you went with Jimmy and other people. Not necessarily. That's not what's in the discussion here with the detective. There isn't anything about where Brown was. And then legally, Your Honor, what I would note is that all of the cases that the government cites for this proposition that it has to expressly, in and of itself, incriminate the defendant are redaction cases, where the whole point of it is there are cases in which the judge, to avoid brutal, took that co-defendant's name out of it and stuck in some other person. And then through a series of inferences, the jury might be able to infer that that reference is back to the co-defendant. That's Richardson was a redaction case. Gray is a redaction case. Every Fourth Circuit case that they cite is a redaction case. But the question that Judge Agee is presenting is why is this statement inculpating? And otherwise, just standing alone, it could be somebody's brother, and he borrowed it. Or he could have stolen Brown's truck. Or they could have his girlfriend let him use it. I mean, there's just so many possibilities that doesn't inculpate Brown. But quite apart from that, Brown later admits himself on the street that it was his truck. Well, Your Honor, the second matter, of course, that doesn't go to the Bruton issue because— Well, it makes it harmless. Well, beyond a reasonable doubt, Your Honor. I would submit that in this trial, if the only other evidence linking him to that truck is an alleged confession to a drug dealer who's seeking to have his 150-month sentence cut, to claim that a jury would still find him guilty beyond a reasonable doubt, I don't think that holds water. I think the issue here is whether or not it facially incriminates him. Have we said, and I don't unfortunately have the case in front of me, but my recollection was that the Fourth Circuit has previously said that the use of the defendant's name is strong evidence that it is inculpatory. Right? The other cases we talk about, like Min and others, are instances where they're trying to tease out whether it's inculpatory by reference. Right. But the case, I thought, from the early 90s that suggested that where you use somebody's name, that that's strongly indicative that it is inculpatory. Now, the degree of inculpation, that's probably not a word, but the degree to which it inculpates him might well become highly relevant at the harmless error stage. But whether it passes that bar seems like the use of his name goes a long way, no? Yes. Please. Well, yes, Your Honor. I would submit that my reason for noting that all the other cases are redaction cases is to recognize that when the court speaks to the issue of is there an influence, it's talking about where they never used the name, but can you get it back to him. I would submit this is a case where they flat out used his name and implicated him in a way where a juror could only conclude that he's part of the group. Thank you. Mr. Sachs. May it please the Court, good morning. Andrew Sachs here from Nauvoo on behalf of Mark Wallace, co-appellant. Your Honor, as I have raised, the Court was gracious enough to grant us a supplemental brief opportunity. I was trial counsel to Mr. Wallace, not initially appellate counsel and then came in later. We raised two specific issues with respect to Mr. Wallace that touched upon some of the other arguments, but we zeroed in directly on statements that were made or testimony by witnesses that we submit were hearsay as to Mr. Wallace that implicated directly Mr. Wallace by name and other aspects. They were highly prejudicial and we believe they should not have been admitted at all. It should have been a redaction or some kind of action by the trial court to preclude this evidence from being presented to the jury as to Mr. Wallace. Now, the Court recognized the importance of this evidence. I understand court district judges, trial judges say things a lot of time in the heat of the moment, but I think the Court was exactly right at the appendix 652. The United States understands the nature of the objection and your case will rise or fall on whether the Court is right or wrong. The Court believes it's right in its ruling, but if you have a position, you need to state it right here on the record now. And I cite that because I think it's important that the trial judge in the best position to recognize this understood the vital nature of this evidence as certainly as to Mr. Wallace. And so if it was not, if it shouldn't have been admitted, it certainly should be reversible error. There were a number of witnesses who testified to what I consider to be hearsay as to Mr. Wallace. Of course, the district court, again, it gave this limiting instruction after the first witness, the first witness that we complained about was Brandon Douglas. And Mr. Douglas, in his testimony, this is what sort of triggered the whole colloquy and the objections in the district court. Mr. Douglas testified that he and Mr. Brown, the co-defendant, were discussing an incident and then moved, this is at 670, the appendix. Did he say what happened with the robbery as far as whether it had gone as planned? Answer, it didn't go as planned, it went wrong. What did he say about it? Let me ask, Mr. Sachs, let me ask you. Yes, sir. Are you claiming that Brown's statements to Douglas here are testimonial? No, no, no, I'm not. I do not, I didn't raise that. I don't want to be at cross-currents with my esteemed colleagues, but I didn't think that was a position I could take in this case. It's more a straight evidentiary issue and that it should, had this been a separate trial, if Mr. Wallace had had a separate trial, I would submit this would not have been admitted. And I think the trial court, in its limiting instruction, that's why it gave this. We are going to determine, this is at 717, well, let me just finish on it, Your Honor. The guts of that testimony was, didn't go as that he would like for it to went. Question, did he indicate whether or not, did he hold anyone responsible for having messed up with the jam? Answer, yeah. He proceeded to tell me that he was upset that Mark Wallace brought some Boston dudes down there to mess the lick up. And he testified what a lick was, a robbery. So it goes right, it zeroes into the entire theory of the case, our client's name, and it's admitted. I urge very strenuously and respectfully that it shouldn't have been admitted against our client, redacted. The court gave this limiting instruction at page 717 of the appendix, joint appendix. We are going to terminate here in about four minutes. But ladies and gentlemen, you have just heard testimony from this witness, Brandon Douglas, about what the defendant, Brown, said was his involvement and co-defendant's involvement was in this offense of March 13, 2009. You are instructed that you may only consider his testimony about what Brown said against Brown. You may not consider any testimony he provided about what Brown said other co-defendants did against another co-defendant. Only against Brown, not against another co-defendant. Now, I'm not complaining about the content of the limiting instruction. I think it was correct. My position is it simply wasn't sufficient to rid the jury of the prejudice. Do you agree that the limiting instruction was wholly unnecessary if the evidence was admitted under 804B3 as a statement against penal interest? Your Honor, I understand those cases. I do. But I have serious questions about the application of that exception in this case. It's unclear to me from the record that the court considered that. The court considered that. Totally get that, right? Yes, sir. I'm asking the legal question. If a statement of a co-defendant is introduced under 804B3 and it's non-testimonial, then it's admissible against all defendants. The Fourth Circuit case law says that. I understand that. Tell me why that should not resolve your client's case. Well, two reasons. One, and I understand the court, you may be hinting at the idea the court was right for the wrong reason perhaps. Or that it was right for the right reason. It says, I want to go back to the original reason. And the original reason argued, it seems to me from reading the record, was 804B3. It seems that the district court got it right for the right reason. But then it seems like now we're arguing about a different reason or alternative ground that was given, which was the 801D2 argument. And I understand now, this wasn't the only witness that this problem arose with. The next witness, and I've got about a minute. I know, but it's the same question with Turner and we can go through it with Berry and Rivera too. But this seems to be, to me, is the most important question. So it doesn't matter which witness we're talking about. Well, I think there's some questions about whether some of that subsequent testimony was truly against interest. It gets hazy. It gets a little bit less clear, less sharp. For example, with Turner, when you were, well, now this is Benson talking to Turner. So I would concur with the court with that. The position that I take is simply this. At the trial, I believe the judge treated it as hearsay. The government made the comment. I'm not sure how strong that comment, how much they put it into the record. But, again, we felt, Your Honor, that it shouldn't have been admitted. It was prejudicial and there's limited instruction. Do we have cases where we've said the instruction, such an instruction, if appropriate, I mean if phrased appropriately, is sufficient to take care of that? Yes, sir. There are cases. Have we held where it is insufficient? I have there. I cited to the court in my brief jurisprudence from the Fourth Circuit that talks generally about where limiting instructions simply aren't sufficient because of the prejudice. I'm trying to find out if we've held specifically under our 801 whether it has ever been held that this instruction was insufficient. I can't cite to a case on that particular hearsay issue, but certainly cases, and, again, I cited a represented one in my time's about up, but if I may finish. Yeah, sure. That, again, there are cases where the testimony, if it's inadmissible, is so prejudicial, it's so damaging, it's so central to the case that. I understand the argument. Yes, sir. I just wonder if we have examples where we've. Right. Okay. I can't give you a specific on that particular exception. All right. Thank you very much. Mr. Grano? Yes. Good morning, Your Honors. Aiden Grano for the government. May it please the court, joint trials serve a critical and beneficial role in the criminal justice system, and I think this is an example of one in which the district court acted ably to administer a factually compact case with specific limiting instructions, giving the jury guidance on how to use particular evidence, and I simply don't see reversible error. Can you start with my question and then come back to where you were? I read, although I agree there's some degree of ambiguity, the district court is admitting Douglas', just to take one example, admitting Douglas' testimony under 804B3 is a statement against penal interest. Somewhat confusingly, he then goes to issue a limiting instruction, which under our case law was not appropriate if admitted under 804B3. But naturally, when I first read it, it suggested to me that that was an appropriate ruling, that 804B3 was correct, and that a limiting instruction was not necessary, so it doesn't matter whether it was effective or not. But your brief does not argue 804B3 at all. Why shouldn't we find that you've abandoned that argument? Your Honor, I think in one case, if I can address Douglas specifically, I think the place the waters get a little muddy with Douglas is that early at J8-256, the district court actually accepts the government's proffer of corroborating evidence, and says I think all of these evidences are sufficiently corroborative. Then later at 656, when Douglas' testimony is actually admitted, there's again a colloquy about it, and the government volunteered to admit it only against Brown out of an abundance of caution. But the court, right, you don't make the ruling, right? The court makes rulings. Right. And the court says I'm going back to the original purpose, right? That is 256, right? Statement against penal interest. That was the original discussion of Douglas' testimony. I understand you suggested a compromise, although it seems like your compromise was the limiting instruction, not the grounds for admission. Right. Right? I mean, you talk about it's okay to use a limiting instruction, but it doesn't seem like it really addresses the question of what was the basis the district court relied upon to introduce it. It seems to me, based on the record that we've got here, the original purpose was J8-256, exactly, but that was a statement against penal interest. I think the district court is totally correct about that. The concern I've got is that you, in your brief, don't argue that at all, right, which suggests to me that you've abandoned that argument, and we have to think really hard about whether we can consider an argument that you've abandoned. Have you abandoned it? And if so, can we ignore that government's abandonment of the argument? Your Honor, I don't think we've abandoned it in the sense of we advanced the bases in our discussion as to what both the alternative bases for the admission were. Quite candidly, when I was writing the brief, based on the district court's use of a limiting instruction, I thought it would be an aggressive argument to make that the district court had actually admitted it under 804 because the district court wouldn't have used a limiting instruction in that instance. So I thought the most accurate representation of the record was that it was limited to the case against Brown alone. I agree with you that the district court certainly had enough evidence and did decide at 256 that it would be sufficiently corroborative at 804. I think the place that comes in in this analysis would be under a harmlessness kind of analysis, that even if, for some reason, the jury disregarded this limiting instruction, there couldn't actually be prejudice to the defendant if it considered evidence that was perfectly admissible against the defendant, at least not such that it forms a new trial. So I take it from that, and then I'll let you go on to the other issues. I take it from that that your argument is we didn't abandon it because in the factual and procedural section, we described what the district court did. I mean, it seems like to me under Rule 28, you've got to put forward the argument, no? I mean, doesn't 802, whatever it is, Federal Rule of Appellate Procedure 28A9-ish, maybe it could be 8, whatever it is. You've got to make the argument, and you didn't make the argument that it was admissible under 804B3. I believe we made it with respect to other witnesses, not this one, Your Honor. Barry and Rivera, for example, you do make it there, but not with respect to Douglas. And I think the court could take that as an abandonment if it wishes, I think. And then the question is whether, given that you've abandoned it, whether we exercise our discretion to consider it or not. Yes, Your Honor. I think on the back end of the analysis as to harmlessness, the court would decide whether or not this is the kind of error that it wishes to grant a new trial on, notwithstanding the government's abandonment. I would say the cases cutting the other direction are those stating that the court can affirm on any basis found in the district court record. Those cases, to my knowledge, are not limited to arguments advanced by the parties. If the court feels finds a sufficient basis in the record to affirm, it can do that. Well, there's a circuit split on that question as to whether the affirm on any ground is based on arguments advanced by the appellee or not. I believe so, Your Honor. So just to recap, if we were to determine that you had abandoned that argument as to this witness, what are we left with then? I think you're left with the admission of it against Brown only, the existence of the district court's limiting instruction, and the lack of a sufficient reason under this court's precedent in Shonlem to assume that the jury disregarded that instruction. And under the test in Greer, saying that it would not only have to be an overwhelming probability that the jury would disregard a specific limiting instruction, but that it would have to have a devastating effect on the defendant's case. I think that standard just simply can't be met in a case where the defendant's own statements admitting to the presence of his truck at the robbery have been admitted against him, and other defendants' individual statements admitting their own culpability. So no matter which way the argument is considered and which way the evidence is considered against a particular co-defendant, that co-defendant had a self-inculpatory statement in which he confessed to participation in the crime. Wasn't that also true of Mr. Kindle? I'm sorry? Wasn't that also true of Mr. Kindle? He had a self-inculpatory statement, and he was acquitted, right? No, Your Honor. Actually, Mr. Kindle was the only of the co-defendants who didn't have a self-inculpatory statement admitted against him. Each of the other three did. Mr. Kindle did not. Mr. Kindle had a statement that he made to Willie Berry where he talked about Benson's participation in the crime. You could infer from him that he was there and had participated, but it wasn't the same kind of, I went into the house. It was, we went down to Virginia and Benson shot someone. He admitted going with him from Boston to Virginia and then says, that guy did the robbery. I was at McDonald's. He didn't even say he was anywhere else, right? He doesn't talk about what he was doing at the time. He just says this happened, and then Benson himself has the same conversation with Willie Berry expressing the same thing. So, essentially, I think there's multiple ways to slice this case in terms of the evidentiary analysis, but it all comes down to the fact that each of the defendants' own self-inculpatory statements were admitted as against them, and then when that limiting instruction was put in place as to certain of those statements, the government's case in clothing was argued against specific defendants using their own statements against them with other generally admissible evidence that was available to them. So, starting, if I can transition then to Mr. Brandt's argument about the government's use of the statements in closing, I don't think this is a situation in which the limiting instruction is overcome, because the government's ability to use generally admissible evidence about other co-defendants to argue one co-defendant's guilt is particularly critical in a joint trial where you have to show that this person's self-inculpatory statement to a cooperating witness was corroborated, was reliable, particularly where, as all of the defense counsel did in their closing, they attacked the credibility of the cooperating witness saying that they were just looking for a plea deal from the government. So, in essence, the rule defense counsel would have this court adopt is one that would tie the government's hands when using self-inculpatory statements against a specific co-defendant in a joint trial. Can I, I just don't want to forget and let you get away without talking about this. With respect to Mr. Brown, the testimony about what Wallace told the officers, can you, for the sake of argument, accept that it was testimonial and that it was incriminating and therefore improper and talk to me about why we should find that error to be harmless? I'm sorry, Aaron, do you mean Wallace's statement to the officers? Yes, right, Wallace's statement about Brown. Right. Over the telephone. And you would like me to assume both testimonial and facially incriminating. Correct. And just talk to me. If I found that to be an error, help me, help me through the sort of harmless beyond a reasonable doubt. I mean, this is the sort of challenge you've got. That it's harmless beyond a reasonable doubt in light of that. So, the only person mentioned in Wallace's testimony is Brown in reference to Brown's truck. Correct. And I think Brown's own statement at JA 670 is that we can't use my truck because it was used in a robbery that didn't go as planned. So, the exact same content of that statement was a self-inculpating statement by Brown that was admissible against him. And I think in light of the way this case was argued and litigated. So, let's just take it as a baseline because your colleague suggested that. If that's all you had, I suggest you would agree that that wouldn't be harmless beyond a reasonable doubt. You've got to put that in context of the other evidence, right? Yes. Just the fact that he made an inculpatory statement wouldn't by itself be enough. I take it. Right. Yes, Your Honor. So, his inculpatory statement talking about his involvement in the planning of the robbery, for one, coupled with the forensic evidence that the government introduced saying that these phones were talking to each other and in the same locations during the time of the robbery. Did they introduce forensic evidence that Mr. Brown's phone was in the area at the time? I believe so, Your Honor, but I want to check because I don't have it off the top of my head. That's fine. I can look it up. Help me. So, the phone evidence, his statement, the phone evidence showing communications and at least some of them in the area. What else should I be looking at in determining whether the hypothetical error that I've described is harmless? I believe those are the two categories, the forensic evidence about the cell phones and Brown's self-inculpatory statements. What about Brown's cell phone call about the two guns that he sold? That's right, Your Honor. I apologize. Talk to me a little bit about that. So, the evidence showed that there were two .40 caliber firearms used in the robbery and the murder, and that Brown is later caught on a gun enforcement wiretap essentially with a cooperating informant trying to get rid of one of the guns that later ballistically matches the gun. Trying to get rid of two guns, right? Two guns, one of which he says is his own. Correct. Both of those guns then later ballistically match the bullets. How were those guns recovered? They were recovered from the informant? They were recovered, I believe, yes. The police officers used an undercover officer. Did they buy the guns from Brown? I believe so. No, sorry. I believe they bought them from the person to whom Brown sold them. Okay. After having a wiretap phone conversation of Brown talking to this person about selling them. Because the wiretap was not the tap. The tap wasn't on the informant. It was on the actual gun trader in New York. Correct. And then the ballistics matched those guns to the murder weapon, or at least one of them. Correct. Just one or both? I don't recall, Your Honor. I apologize. But Brown was on the conversation with the gun trader? With the gun trader, correct. So Brown had a phone call with the gun trader saying, I'm trying to get rid of two guns, one of which he refers to as his. And then that trader later sells those guns to an undercover officer, which are then used in the ballistics test. Anything else? No, Your Honor. If the Court has no further questions, we will rest on our submissions. All right. Thank you, Mr. Brown. All right. We'll start again with Mr. Brandt. Thank you. Assuming for the sake of argument, the Court will find that the government has abandoned this argument and the standard is harmlessness, I would ask the Court to review our brief concerning how this is not harmless, that the government… Can you just remind us which one of the co-defendants is yours? Benson, I'm sorry. Benson, gotcha. The government made a part of its case against Mr. Benson that he was a Boston dude. It goes back and forth, the testimony of Douglas. It's a Boston dude, the Boston dudes. It's Douglas's testimony that established that Benson was this Boston dude. And without that testimony, it would show that this was not harmless. This was the government's case. And that may be… Don't you… I mean, you got the hardest case. I mean, you got a client, right? I understand that. But, you know, your guy's DNA is at the scene. Your guy's, you know, talking about this, you know, like it's his kid's birthday, right? I mean, he's going around talking to everybody about what he's done. His DNA is found there. I mean, if we got to harmless with your guy, your guy seems to be the hardest of them to get over, no? I'll admit it's the hardest. I'll submit that it's still hard. And I would say that the government's closing argument helps demonstrate that point. I would further submit that the government is incorrect, that this court would be making some sort of incredible decision to find that in this case the government's closing arguments eliminated the power of the jury instruction. It is not necessary to go farther than saying, Mr. Brown, Mr. Douglas said this about Mr. Brown, and that's admissible against Mr. Brown, and not go farther and say things after you say, they, Mr. Brown and his friends, didn't have guns, but then immediately say Mr. Benson did. Or say that Douglas's testimony established that Brown was down there, and then immediately say after that, and that's the Boston boys, and we know who the Boston boys are. After the government's taken so much pains to get through Douglas, that the Boston boys are involved, it's the government telling the jury, Mr. Benson's one of them. That's the reason for these three instances. That's the difference between something being facially incriminating and incriminating by result of other evidence. Yes, Your Honor. I love that question because the difference between the cases that talk about what evidence comes later, if it were only later we found out that Benson happened to be from Boston, that might be one thing. This is not that case. This is not a case where there has to be some stretch to find out later that Mr. Benson was a Boston boy. But what Min tells us is if this was the very first testimony in the trial, would it be inculpatory? And the answer is no, because we don't know where anybody's from at that point. That's true, but I would compare it to the other cases that talk about what it takes to link, and they're not close to this, when the government's case against Benson is that he's a Boston boy. All right. Thank you, Your Honor. Thank you, Mr. Brown. Mr. Kelter? Your Honor, just three quick points on the three elements I think are the root issue. Judge Richardson, on harmless error, my brief, the appellate's initial brief at pages 53 through 55, I think, provides a succinct summary of what that evidence was against my client. You're Mr. Brown? Yes, Mr. Brown. This is on the Bruton issue. No, I understand. Yes. And so I have about a three-page summary, and I think that accurately shows that, and I summarize it in the context that it's normal harmless error. But, of course, in the Bruton context, it's beyond a reasonable doubt. And I would submit if you read that summary, it shows that this is not harmless beyond a reasonable doubt. On the issue of whether it's testimonial, to help narrow the issue down to whether or not it's incriminating, I would note that this court's standard for testimonial is in the Dargan case from 2013, and it's whether a reasonable person in the declarant's position would have expected his statements to be used at trial. That is, whether the declarant would have expected or intended to, quote, bear witness against another in a later proceeding. And I would submit that when... Is that the... Is that applicable even if the witness comes forward to the police as a volunteer, just basically trying to help the police? Oh, absolutely. Even more so. Because the whole point, and right before Detective Kemp's testimony about, he said they were in Brian Brown's truck, he says, I told them I can't make promises. The whole point of that is he's... Mr. Wallace is calling the police precisely to cooperate in an investigation, hoping that it goes to court. I mean, the whole way... That'd be the same whether he was a co-defendant or if it was just an eyewitness, right? So if an eyewitness calls in and says, Hey, I just saw these two guys run out of the bank, that'd be testimonial in the same way. Well, not necessarily. Well, it could be, yes. But what I'm saying is even more so, even more than that. I think that is testimonial. But in these federal cases, co-defendants or just co-suspects, they reach out to the police precisely because they want to bear witness against other people. That's why they're doing it, to bear witness so that they can get it cut in their time. Actually, they're trying to deflect from themselves. Respectfully, no, they're trying to get a time cut, which means... Well, but they're deflecting by bearing witness. I think Wallace is trying to deflect. Actually, he confessed to the robbery. Well, yes. So that's the whole point is... I understand. I agree he's deflecting, but he's deflecting by saying, Let me bear witness against this other guy in court. So I would submit it is testimonial. It's not beyond a reasonable doubt harmless. And I would suggest if you look at the Gray case, it really helps emphasize, if I may just finish this comment, that the whole issue of whether or not it's an inference deals with when they don't actually name the person. In this case, he is named, and it's clear that any juror hearing that would say he's involved. All right. Thank you. Mr. Sachs. Again, may it please the Court. Your Honors, with all due respect to my opponent, my friend, I think the government has candidly conceded it abandoned the argument in light of Judge Richardson's questions with respect to the statement against penal interest. If that's the status of the record, if that's what the Court finds, then we're left with the analysis that I think I at least presented initially that we're dealing with a hearsay statement against Mr. Wallace that should never have been admitted at all. It should have been redacted. The jury never should have heard it whatsoever. However, as we all know, we appellants are held to a very strict standard when we don't make an argument in a brief appeal. It's waived. It's abandoned. I think the government at the gate has to swing the same way. That leaves us with the district court's finding. I repeat it again. I don't want to say it just to say it again, but I think it's important. The district judge in the best position. I cited you his quote stating to the government, your case is going to rise. This is on the Douglas witness, the first one in the series where I was perhaps most strident. And he said, the district court said, this case is going to rise or fall on this ruling. That shows how central it was. Given the specificity of Mr. Douglas' testimony against Mr. Wallace, he proceeded to tell me that, in his conversation with Brown, that he was upset that Mark Wallace brought some Boston dudes down there to mess the lick up. I don't see how the court can find that that was not, that there wasn't the potential for the jury to be highly offended by that. Now, the rest of the case against Mr. Wallace was pretty weak. And I understand that his Honor, Judge Niemeyer, talked about Wallace's statement to the officer to deflect. What he actually said was, I'm a thief. Basically, I commit burglaries. I'm not a robber or a, I'm not a burglar. And as we all know, the case law is very clear on this particular, there's a very specific statutory offense here. It was a, it charges a murder, but it's in the context of the use of a firearm in the commission of a crime of violence or a drug trafficking crime. And the law requires that the, to be convicted, you must know in advance that there is a firearm. That, on that point, on that crucial point, the record is very, very slim and thin. When it's aiding and abetting and it comes in after the conduct that he, I mean, just hypothetically, if Benson came out waving a gun and said, I got him, I got him, and then puts a gun in his belt and gets in the car and tells us that. Now, that's the first time Wallace says, I learned of that. Would that be sufficient? I don't think that's a very good question, but I think that would constitute somebody perhaps as an accessory after the fact or the federal equivalent. Well, he's aiding and abetting here. That's true, but that has to be before the fact. I mean, I would submit if you don't know anything before the fact. Withdraw. He didn't say, oh, that, he didn't object. In other words, if there was evidence of his objecting and withdrawing, that's one thing, but I thought there was some case law that suggests that if he continued, and of course he did, he took him then to the bus station and put him on an earlier bus back to Boston, which is a continuing participation in the scheme. And if he withdrew, I'm washing my hands of this. I have nothing to do with this. Don't get in the car. That's one thing. But if he comes in the car and then takes him to the station with that evidence, isn't that evidence that can be considered? Your Honor, and I don't want to argue with His Honor, but I would question whether that's sufficient. Well, it's hypothetical. To constitute sufficiently on this particular statutory offense. And the problem we have here is because the government didn't argue that at all in their brief. They didn't argue that, well, it was a continuing offense where he aided and abetted after the fact somehow. They didn't argue that to the jury. I respect the hypothetical, but I think it's so outside of what happened. I think we're compelling. Well, what happened is he's sitting in the car and there's six shots fired. And, of course, he hears the six shots. And then he drives them to the bus station ahead of schedule. So the hypothetical isn't false. It seems to me that would be some evidence that guns were around and he didn't object to it. May I respond now? Yes. I know I'm well into the overtime. Again, my sense of it is that without any prior, knowing about it after the fact, doing something afterwards, I don't think that leapfrogs him into being a principal before the fact. Someone who, the law on this offense, the elements require that advanced knowledge of the firearm. That's very important. And without that, no matter what happened afterwards, I would submit, Your Honor, that that wouldn't save the government in this case. Aiding and abetting. Aiding and abetting would. But I would submit that aiding and abetting on this particular type of offense, that the post-conduct that you're describing wouldn't be sufficient to bootstrap it into aiding and abetting because of the elements of this particular statutory offense. All right. Thank you, Mr. Stein. Yes, and thank you for the additional time. Mr. Kelletter, you're court-appointed, are you? Yes. You're the only one among everybody else's on some other basis, but I want to recognize your service to the court. Actually, of course, everybody's. It's part of our good due process. But I want to call out your service in particular. Thank you. We'll come down and greet counsel.
judges: Paul V. Niemeyer, G. Steven Agee, Julius N. Richardson